## Commonwealth, ex rel. *v.* Foster, Appellant.

*Fish law—Navigable streams—Posting land by owner—Act of March 26, 1814, 6 Sm. L. 187, May 29, 1901, P. L. 302 and April 14, 1905, P. L. 169.*

The Lackawaxen creek which was declared by the Act of March 26, 1814, 6 Sm. L. 187, a public highway "for the passage of rafts, boats and vessels," but which is not in fact navigable for rafts, boats and vessels, is not a stream in which public fishing is permitted, as provided by the the Act of May 29, 1901, P. L. 302; and if the owner of the bed. of the creek duly posts it in compliance with the Act of April 14, 1905,.P. L. 169, a person fishing therein, is liable to the penalty provided by the latter act.

Argued March 2, 1908. Appeal, No. 6, Jan. T., 1908, by defendant, from judgment of Q. S. Wayne County, April ·T., 1906, No. ₃31, sustaining summary conviction·in case of Commonwealth ex rel. David Hopkins v. H. J. Foster. Before RICE, P. J., PORTER, HENDERSON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Appeal from summary conviction.

PURDY, P. J., filed the following opinion:

These cases are appeals by H. J. Foster, who is named in

the transcripts as plaintiff, but who is in reality the defendant in the above stated cases.

The justice's transcripts state:

"Warrant in trespass on posted private property. Plaintiff brings suit against defendant for trespass on Act of Assembly, an act making it unlawful to trespass on posted private property." And this is all that appears in the justice's record to sustain the proceedings. But the counsel who represent the appellant waive all questions of informality in the record and proceedings and request us to consider the cases upon their merits, as disclosed by the testimony.

The cases are substantially similar and our rulings upon the questions involved in the first case will apply to all.

The complainant, David Hopkins, was the owner of the land upon which the alleged trespass was committed and, at that time, had proper notices posted thereon, in compliance with the Act of April 14, 1905, P. L. 169, under which the action was brought. The Lackawaxen creek runs through said land, and the defendant, on May 17 last, entered the creek at the crossing of the highway and, keeping within the banks of the stream, followed its bed (fishing) through complainant's premises.

By Act of assembly of March 26, 1814, 6 Sm. L. 187, the Lackawaxen creek, at the point in question, with several other creeks, is declared a public highway "for the passage of rafts, boats and vessels."

Section 23 of the Act of May 29, 1901, P. L. 302, provides: "That from and after the passage of this act public fishing shall exist in the following waters of this commonwealth: All waters within land owned by the commonwealth; all waters and parts of waters that have been or may be declared navigable by Acts of Assembly, or public by common law, and such other waters made public by its owners by grant or usage."

It is contended on the part of the appellant:

1. That the act of 1814, above cited, gave him the right to follow the bed of this stream for fishing purposes.

2. If, under that act, he was not so entitled, then by section 23 of the act of 1901, above quoted, this stream falls

within the class of waters therein designated as open to public fishing—as one "declared navigable by Acts of Assembly"— and the right was thus given.

These propositions are denied by the complainant and the issue is thus presented.

This stream, ordinarily, affords but little water and is not susceptible of—and has never been used for—the passage of rafts, boats or vessels. It has, however, been used sometimes during freshets for floating loose saw logs, which method of use, according to the decision in Dedrick v. Wood, 15 Pa. 9, is within the purposes prescribed by this act.

The great rivers of the state, which are navigable by nature, are public highways at common law. The commonwealth, having dominion over these streams, has an unquestionable right to declare them public highways, but this is not necessary to make them such, and the only effect of such a statute is to bring the stream within the milldam act of March 23, 1803. If a stream is not in fact navigable it cannot be made so by the mere passage of an act of assembly. "If the stream is not actually navigable, so that there is no public right of way therein, a declaration by the legislature that it shall be regarded as navigable is a taking of property for public use, and unless compensation is made the statute will be in conflict with the constitutional provision requiring compensation in such cases:" The Barclay Railroad & Coal Co. v. Ingham, 36 Pa. 194; Farnham on Waters, 103, 119.

With respect to the smaller streams and creeks the state grants to the riparian owner the soil over which they flow, without any reservation respecting them. But the property so granted is, nevertheless, subject to the public easement of the use of such stream for the purposes of navigation, so far as they are capable of it: The Barclay Railroad & Coal Co. v. Ingham, 36 Pa. 194. In such streams the public have no right of fishing: 1 Wood on Nuisance (3d ed.), sec. 450; nor the right to shoot fowl: Winous Point Shooting Club v. Bode, 20 Ohio C. C. 637. And the same rule is held in State v. Shannon, 38 Am. Rep. 599, and in Sterling v. Jackson, 13 Am. Rep. 405. And see the very elaborate opinion of the supreme

court of Washington in Griffith v. Holman, 54 L. R. A. 178, in the same line. In short, the navigation right is a right of passage only, and for all other purposes the exclusive right rests in the riparian owner: 2 Farnham on Waters, 1375, etc.

It appears—and it is claimed as an important fact in the case—that under the Act of June 3, 1895, P. L. 130, the state has recently constructed several bridges across the stream in question.

This act requires the state to rebuild county bridges destroyed by casualty "over and across the navigable rivers and such other streams as have been declared public highways by Act of Assembly."

But we cannot see how the fact that the state authorities have considered the rebuilding of these bridges a state duty, under this act of assembly, affects the question at issue one way or the other.

From what precedes we conclude:

1. That the stream in question is not navigable within the accepted and proper meaning of the term.

2. That the act of assembly declaring it a highway for the purposes therein specified gave the public no rights in the premises not previously possessed by it.

3. That the public did not possess the right of fishing in this stream before the passage of the act of 1814, and acquired no such right thereby.

4. That the stream in question does not come within the class mentioned in section 23 of the act of 1901, as open to public fishing; and, if it did, the act, in our opinion, would be inoperative to impose a servitude upon the complainant's premises as contravening the constitutional provision that private property shall not be taken for public use without just compensation being first made or secured.

If these premises are correct it follows that, in entering upon the complainant's land, the appellant was a trespasser, and as such was liable to the penalties imposed by the act under which the proceedings were instituted. And so we hold, and find and enter the following judgment and conviction:

Now, January 14, 1907, H. J. Foster, of the county of Wayne,

and state of Pennsylvania, yeoman, is convicted before the court of quarter sessions of the peace of Wayne county of willfully entering upon land owned by David Hopkins on May 17, 1906. Said land being situated in Clinton township, in the county of Wayne aforesaid, printed notices having previously been prominently posted upon said land by said owner, stating that the said land is private property and warning all persons from trespassing thereon under the penalties provided in the act of assembly No. 124, approved April 14, 1905, which notices remained so posted at the time of such entry by the said H. J. Foster.

And it is adjudged that for the said act of trespass the said H. J. Foster forfeit and pay a fine of $5.00, with costs of suit, to be distributed according to law. And in default of payment of said fine and costs that the said H. J. Foster be committed to the county jail of said county for the period of five days, being one day for each dollar of said fine.

*Error assigned* was the order of the court.

*Frank P. Kimble,* for appellant.—The Lackawaxen river clearly comes within the provisions of the Act of May 29, 1901, P. L. 302, which grants the right of public fishing in all waters or parts of waters that have been declared navigable by act of assembly. The legislature was clearly within its constitutional rights when, in the exercise of its police powers and for the benefit of the community and the proper protection of fishing rights it declared all these definitely designated navigable streams open to the public for the purpose of fishing: Barclay R. R. & Coal Co. v. Ingham, 36 Pa. 194; Coovert v. O'Conner, 8 Watts, 470; Powell v. Com., 114 Pa. 265; Philadelphia v. Scott, 81 Pa. 80; McDevitt v. Gas Co., 160 Pa. 367; State of Vermont v. Theriault, 43 L. R. A. 290; Sentell v. Railroad Co., 166 U. S. 698 (17 Sup. Ct. Repr. 693); Sharpless v. Mayor, of Philadelphia, 21 Pa. 147.

*L. M. Atkinson,* with him *A. T. Searle,* for appellee, cited: Barclay R. R. & Coal Co. v. Ingham, 36 Pa. 194; Allbright v.

Lake & Park Commission, 68 N. J. L. 523 (53 Atl. Repr. 612); Woodruff v. Neal, 28 Conn. 165; Stackpole v. Healy, 16 Mass. 33; Tonawanda R. R. Co. v. Munger, 5 Denio, 255.

Opinion by Rice, P. J., July 15, 1908:

This case came into the court below by appeal by the defendant from a summary conviction by a justice of the peace for a violation of the provisions of the Act of April 14, 1905, P. L. 169, entitled, "An act making it unlawful to trespass upon land posted as private property, and providing a penalty therefor." As an appeal from the judgment of the quarter sessions in such a case does not bring up the evidence, the case is not before us for review upon any question of fact. We must presume, therefore, that all of the essentials to a conviction, as set forth in the judgment, were established by competent and sufficient evidence, and, amongst these, the facts that the defendant willfully entered upon the land of David Hopkins, the relator, without his consent, that printed notices that it was private land and warning all persons against trespassing thereon had been previously posted by the owner in the manner prescribed by the act, and that the notices remained so posted at the time of the alleged trespass. Nowhere in the record proper is it expressly stated that the land upon which the defendant entered was the bed of Lackawaxen creek. It is conceded, however, on all hands that such is the fact. But neither that fact nor any other fact upon which the court based its judgment qualifies in any degree the relator's ownership of the land. But although his ownership is undisputed, it is contended that he cannot claim the protection of the act of 1905 (and if so he could not maintain the common-law action of trespass) as against one going upon that part of his land for the purpose of fishing, because by the prior act of 1901 the legislature declared that "public fishing shall exist" in certain waters, and amongst them "all waters or parts of waters that have been or may be declared navigable by acts of assembly," in which class of waters, it is claimed, the part of Lackawaxen creek where this alleged trespass was committed was placed by the act of 1814. It is not seriously claimed, at

least, it cannot be successfully claimed, that this asserted right of the public to go upon the land in question for the purpose of fishing is a common-law right, nor that it was reserved by the commonwealth in its grant of the land to the relator's predecessors in title, nor that it was conferred by the act of 1814. Therefore, to sustain appellant's contention that he, as well as every other member of the general public, has this right, these propositions must be established: first, that the legislature intended by the act of 1901 (a) to include in the designation "all waters and parts of waters that have been or may be declared navigable by acts of assembly" every stream, large or small, navigable or unnavigable, that had been declared a "public highway for the passage of rafts, boats and vessels," (b) to give to every member of the public the right to go upon the land over which any such stream flows for the purpose of fishing, and to that extent to deprive the owner of his dominion over the same; second, that this right still continues notwithstanding the generality of the words of the act of 1905; and, third, that it was within the power of the legislature to give the public such right, and to thus restrict the dominion over land which appertains to private ownership, without providing for just compensation being made or secured to the owner, and that, too, although the stream be not in fact navigable by nature, and has never been in fact, or been declared by the legislature, a public highway except for a limited purpose. Before adopting a construction of the twenty-third section of the act of 1901, which would be so far reaching in its effect upon the right of the owner of land to control its use, so long as such use does not injuriously affect others, it ought to be clear that the very words of the act require such construction. To say the least, there is room for argument that the words of the twenty-third section, particularly when read in connection with the preceding section, do not require the construction which the appellant's counsel claim for them. But be that as it may, and assuming that the legislature intended all that is claimed, we cannot agree with the appellant's counsel that the legislation can be sustained as a legitimate exercise of the police power, upon the

ground—and we must so construe their printed argument— that the public health and comfort will be subserved thereby. No case cited by the learned counsel goes to the extent, or anywhere near the point, of holding that it is within the power of the legislature to provide for the public the means of healthful recreation upon private land, and for that purpose to deprive the owner of this right to control the use of it, without compensating him for such partial or total destruction of his dominion over it. If the legislature may do it in the manner and for the purpose here claimed, it would be difficult to draw the line beyond which it may not go for that purpose. In the case of Vermont v. Theriault, 43 L. R. A. 290, which goes as far as any in asserting the jurisdiction of the state over such streams as this, it was carefully noted in the opinion of the majority of the court that by providing that such waters should be waters over which the state has jurisdiction the legislature did not take away the riparian owner's right to maintain trespass against everyone who should enter without his license upon his premises and catch fish from the nonboatable stream thereon. But we need not prolong the discussion. Our purpose in what we have said has been to state the question for decision and our conclusion thereon. The nature of this creek, and the uses to which it is adapted, and has been put, as well as the legislation pertaining to it and similar streams, have been fully set forth in the opinion of the learned judge below. He has also discussed the legal questions as fully as is profitable, and has sustained his conclusion by reasoning and citation of authority which make it unnecessary for us to add anything further to what he has so well said.

The judgment is affirmed.